UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |
|---|---|
| NORTHAMPTON INTERNAL MEDICINE ASSOCIATES, P.C.,<br><br>   Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY,<br><br>   Defendant. | CIVIL ACTION<br>NO. 05-30090-MAP |

**MEMORANDUM BY DEFENDANT IN SUPPORT OF ITS
MOTION TO DISMISS UNDER RULE 12(b)(6)**

Defendant General Electric Company ("GE") respectfully submits this memorandum of reasons, pursuant to Local Rule 7.1(B), in support of its motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

*Factual Background*

This case is about plaintiff's difficulties adapting to a new electronic billing system used to submit medical claims for payment by third-party payers.

In early 2003, plaintiff Northampton Internal Medicine Associates, P.C. ("NIMA") needed to convert to new practice management software because its existing software would no longer be supported after March 2003. Declaration of Karri Huff, ¶ 5 (hereafter, "Huff Decl."). It chose to license software from Millbrook Corporation ("Millbrook") known as the Millbrook Practice Manager$^{TM}$ ("MPM"). Huff Decl. ¶ 5. At the time, that software had been installed in more than 2,200 physician practices in the U.S and was in use by more than 9,500 physicians in over 70 specialties. Huff Decl. ¶ 6. The system included an electronic claims submission component, commonly referred to

{W0364691.1}   1

as electronic data interchange or EDI. Huff Decl. ¶ 6. This time-saving method of handling insurance claims processed more than 2 million transactions every month. Huff Decl. ¶ 6.

Millbrook is headquartered in Carrollton, Texas, a suburb of Dallas. Huff Decl. ¶ 2. In December 2001, Millbrook was ranked Number 249 on Deloitte & Touche's prestigious Technology Fast 500 Program, a ranking of the 500 fastest-growing technology companies in North America. Huff Decl. ¶ 2. In late November 2002, General Electric Medical Systems Information Technologies, Inc. ("GEMS IT"), the wholly-owned healthcare IT subsidiary of GE, announced that it was acquiring Millbrook. Huff Decl. ¶ 3.

GEMS IT completed the acquisition in January of 2003. Huff Decl. ¶ 4. Millbrook did not cease to exist, however. Instead, as the acquisition documents provided, it continued "unaffected and unimpaired by the Merger to exist under and be governed by the laws of the State of Texas."[1] Declaration of Robert H. Stier, Jr., ¶¶ 2-3, Exhibit C. Following the acquisition, it has remained a wholly owned subsidiary of GEMS IT and a Texas corporation in good standing. Stier Decl., ¶ 4, Exhibit D.

As part of its decision to license the MPM software, NIMA also decided to transmit electronic claims to third-party payers using the Millbrook EDI services. Huff Decl. ¶ 7. On February 24, 2003, NIMA entered into an Electronic Data Interchange Agreement (the "EDI Agreement") specifying the terms and conditions under which Millbrook would provide a mechanism to be used by NIMA for the purpose of submitting electronic claims files created with the Millbrook software. Huff Decl. ¶ 7, Exhibit A.

---

[1] The acquisition was accomplished by merging a newly created acquisition company into Millbrook, with Millbrook being the "Surviving Corporation" following that merger.

{W0364691.1}                                 2

That Agreement, signed by Roxanne Haber, Office Manager at NIMA, provides in bold print, all caps, that:

> **ANY JUDICIAL PROCEEDING BROUGHT BY OR AGAINST ANY OF THE PARTIES TO THIS AGREEMENT ON ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR ANY MATTER RELATED HERETO SHALL BE BROUGHT IN ANY FEDERAL OR STATE COURT SITTING IN DALLAS COUNTY, TEXAS, AND, BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH OF THE PARTIES TO THIS AGREEMENT ACCEPTS FOR ITSELF THE EXCLUSIVE JURISDICTION AND VENUE OF THE AFORESAID COURTS AS TRIAL COURTS, AND IRREVOCABLY AGREES TO BE BOUND BY FINAL NON-APPEALABLE JUDGMENT RENDERED IN CONNECTION WITH THIS AGREEMENT.  THIS AGREEMENT HAS BEEN ACCEPTED BY A LICENSEE AT DALLAS, TEXAS, AND SHALL BE GOVERNED AND CONSTRUED UNDER AND IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO ITS CONFLICT OF LAW PRINCIPLES.  THE PARTIES AGREE TO SUBMIT ALL DISPUTES ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT TO NONBINDING ARBITRATION CONDUCTED IN DALLAS, TEXAS IN ACCORDANCE WITH THE RULES PROMULGATED BY THE AMERICAN ARBITRATION ASSOCIATION.**

Subsequently, NIMA installed the Millbrook Practice Manager$^{TM}$ software on new hardware purchased from a separate vendor.  Huff Decl. ¶ 9  When that software, was installed by NIMA or its agents, they were required to accept an End User License Agreement or EULA in order to complete the installation.  Huff Decl. ¶ 9, Exhibit B.  The EULA provided, under the heading General Conditions and Provisions in paragraph 3.1:

> **ANY JUDICIAL PROCEEDING BROUGHT BY OR AGAINST ANY OF THE PARTIES TO THIS AGREEMENT ON ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR ANY MATTER RELATED HERETO SHALL BE BROUGHT IN ANY FEDERAL OR STATE COURT SITTING IN DALLAS COUNTY, TEXAS, AND EACH OF THE PARTIES TO THIS AGREEMENT ACCEPTS FOR ITSELF THE EXCLUSIVE JURISDICTION AND VENUE OF THE AFORESAID COURTS AS TRIAL COURTS, AND IRREVOCABLY AGREES TO BE BOUND BY FINAL NON-APPEALABLE JUDGMENT RENDERED IN CONNECTION WITH THIS AGREEMENT.  THIS AGREEMENT HAS BEEN ACCEPTED BY A LICENSEE AT DALLAS, TEXAS, AND SHALL BE GOVERNED AND**

**CONSTRUED UNDER AND IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO ITS CONFLICT OF LAW PRINCIPLES. THE PARTIES AGREE TO SUBMIT ALL DISPUTES ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT TO NONBINDING ARBITRATION CONDUCTED IN DALLAS, TEXAS IN ACCORDANCE WITH THE RULES PROMULGATED BY THE AMERICAN ARBITRATION ASSOCIATION.**

On March 18 to 20, a Millbrook representative conducted training at NIMA to show the users how to use the MPM software. Huff Decl. ¶ 12. After the MPM system was up and running, NIMA began complaining of problems processing claims using the EDI components. Huff Decl. ¶ 13. In particular, some claims submitted to Tufts Health Plan and to Blue Cross Blue Shield of Massachusetts appeared to have been improperly formatted, apparently resulting in the initial rejection of those claims. Huff Decl. ¶ 13. The problem was compounded by NIMA's failure to resubmit many of the rejected claims in a timely manner. Huff Decl. ¶ 14. However, representatives of Millbrook subsequently worked with NIMA to resubmit and obtain payment on these rejected claims and, in many cases, these efforts succeeded in reversing the initial rejections. Huff Decl. ¶ 14. However, despite the combined efforts by NIMA and Millbrook, some of the claims have still not been paid. These unpaid claims, now totaling less than $50,000, are the subject of this action. Huff Decl. ¶ 15.

ARGUMENT

I.    THIS ACTION MUST BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST GE.

Plaintiff's complaint clearly shows that the dispute which is the subject of this action is between NIMA and Millbrook. Without any justification, plaintiff incorrectly refers to Millbrook as GE's predecessor. Complaint, ¶ 6. In fact, Millbrook is a separate corporate entity that is now wholly owned by GEMS IT. It is headquartered near Dallas.

Most of the people who have worked on the NIMA account work in Carrollton, Texas. Most of the files that relate to this litigation are also located in that same office.

Contrary to plaintiff's unsubstantiated averments, GE has not "succeeded to [Millbrook's] obligations under the various agreements between NIMA and Millbrook." Complaint, ¶16. The mere purchase of a company's shares does not magically transform the obligations of that company into the obligations of the new parent corporation. The First Circuit summarized this fundamental principle in *Santa Maria v. Owens-Illinois, Inc.*, 808n F.2d 848, 856:

> The general rule in the majority of American jurisdictions . . . is that 'a company which purchases the assets of another company is not liable for the debts and liabilities of the transferor.' *Araserv, Inc. v. Bay State Harness Horse Racing and Breeding Association, Inc.,* 437 F. Supp. 1083, 1089 (D.Mass. 1977). The general rule is subject to four well-recognized exceptions permitting liability to be imposed on the purchasing corporation:
> (1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations. *Dayton v. Peck, Stow & Wilcox Co. (Pexto),* 739 F.2d 690, 692 (1st Cir. 1984) (*citing Leannis v. Cincinnati, Inc.,* 565 F.2d 437, 439 (7th Cir. 1977); *Araserv,* 437 F. Supp. at 1089-90; 15 Fletcher, Cyclopedia of the Law of Private Corporations §§ 7122-23) (footnote omitted).

Here, none of the four exceptions applies: there was no express or implied assumption by GEMS IT of Millbrook's liabilities; the transaction was not a merger of GEMS IT and Millbrook; GEMS IT is not merely a continuation of Millbrook; and the transaction was not entered into fraudulently to escape liability for Millbrook's obligations. Thus, the general rule applies: GEMS IT is not liable for the debts and liabilities of Millbrook, and neither is its parent company, GE. .

In summary, even if Millbrook were liable to NIMA, plaintiff has failed to state a claim against GE upon which relief may be granted. For that reason alone, plaintiff's complaint should be dismissed.

II. PLAINTIFF'S FAILURE TO CONFORM TO THE FORUM SELECTION CLAUSE IN ITS AGREEMENTS REQUIRES DISMISSAL OF THIS ACTION.

As this court has observed recently, "forum selection clauses are almost universally enforced. *See, e.g., Silva v. Encyclopedia Britannia, Inc.,* 239 F.3d 385 (1st Cir.2001)." *Extra Fresh LLC v. Groupe Guillin*, 2005 WL 958401, *2 (D. Mass. 2005). They are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Silva, id.* at 386.

In this instance, the parties agreed to a forum selection clause both with respect to the EDI services provided by Millbrook and with respect to the MPM software that Millbrook licensed to NIMA. In both cases, the selected forum was that of Dallas County, Texas, where Millbrook is headquartered.

In both instances, the language of the forum selection clause is mandatory, not permissive: "any judicial proceeding … arising out of this agreement or any matter related hereto *shall* be brought … in Dallas County, Texas." (Emphasis supplied.)

As Judge Saris recently observed in *Nisselson v. Lernout*, 2004 WL 1630492, *2 (D. Mass. 2004):

> In the First Circuit, "motion to dismiss based upon a forum-selection clause is treated as one alleging the failure to state a claim for which relief can be granted under Fed.R.Civ.P. 12(b)(6)." [*Silva,*] *id.* at 387. Courts should enforce a forum-selection clause unless the opposing party shows that enforcement "would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching."

Judge Saris also noted that the "burden in resisting the forum selection clause is a heavy one." *Id.* (*citing Doe v. Seacamp Ass'n, Inc.,* 276 F.Supp.2d 222, 225 (D.Mass.2003) and *D'Antuono v. CCH Computax Sys., Inc.,* 570 F.Supp. 708, 712 (D.R.I.1983)).

For the court to enforce this particular clause is both reasonable and just. It was quite reasonable for Millbrook to insist that any legal action be brought where it is headquartered. As the First Circuit observed in *Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993), a vendor's interest in consolidating "litigation involving far-flung operations … was eminently reasonable."

Removing another potential obstacle to enforcement of a forum selection clause, the First Circuit noted in *Silva*:

> that the forum selection clause is a "boilerplate" provision does not *ipso facto* render it invalid. "It is not the law that one must bargain for each and every written term of a contract." *Lambert,* 983 F.2d at 1119-20 (internal quotation omitted); *see also Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (refusing to find a nonnegotiated forum-selection clause in a form ticket unenforceable "simply because it is not the subject of bargaining").

239 F.3d at 389.

Similarly, the courts of this circuit have enforced forum selection clauses that are included in software license agreements such as that governing the use of the MPM software here.

> Forum selection clauses of the type used by AOL, sometimes referred to as "clickwrap" agreements, have been upheld as valid and enforceable. See, e.g., *Caspi v. Microsoft Network, L.L.C.*, 323 N.J.Super. 118, 126, 732 A.2d 528, 532, cert. denied, 162 N.J. 199, 743 A.2d 851 (1999); *Celmins v. America Online, Inc.*, 748 So.2d 1041, 1041-42 (Fla.Dist.Ct.App.1999).

*Hughes v. McMenamon*, 204 F.Supp.2d 178, 181 (D. Mass. 2002).

Finally, the fact that NIMA's complaint also includes tort claims relating to the parties' contractual undertakings does not prevent dismissal of the entire complaint. In this circuit, it is clear that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." *Lambert,* 983 F.2d at 1121-22.

In short, when the principles governing forum selection in the First Circuit are applied to these facts, they require the dismissal of plaintiff's complaint for failure to state a claim upon which relief may be granted.

*Conclusion*

For all the reasons set forth above, plaintiff's complaint should be dismissed for failure to state a claim against GE upon which relief can be granted.

Dated: June 16, 2005

/s/ Robert H. Stier, Jr.
Robert H. Stier, Jr. (BBO#646725)
Margaret Minister O'Keefe
PIERCE ATWOOD
One Monument Square
Portland, ME  04101
(207) 791-1100
*Attorneys for Defendant*

CERTIFICATE OF SERVICE

      I hereby certify that on June 16, 2005, I electronically filed a copy of the Motion to Dismiss, Memorandum of Reasons, and accompanying declarations and exhibits with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

      Keith A Minoff, Esq.
      Robinson Donovan, P.C.
      1500 Maine Street, Suite 1600
      Springfield, Massachusetts 01115

      /s/ Robert H. Stier, Jr.
      Robert H. Stier, Jr. (BBO#646725)