UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | | |
|---|---|---|
| NORTHAMPTON INTERNAL MEDICINE ASSOCIATES, P.C., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 05-30090-MAP |
| GENERAL ELECTRIC COMPANY, | ) ) | |
| Defendant. | ) ) | |

**DECLARATION OF KARRI HUFF**

Karri Huff declares under penalty of perjury as follows:

1.      I reside in Dallas, Texas.  I am employed by GE Medical Systems Information Technologies, Inc. in Carrollton, Texas as EDI Services Manager. Previously, I was employed by Millbrook Corporation ("Millbrook") from 2000 to 2003 as Product Analyst.  My current role involves the management of the EDI services team, which handles accounts including Northampton Internal Medicine Associates.  I make this declaration of my own personal knowledge unless otherwise indicated.  I am competent to be a witness in this proceeding, and if called, would testify as follows.

2.      Millbrook is headquartered in Carrollton, Texas, a suburb of Dallas.  In December 2001, Millbrook was ranked Number 249 on Deloitte & Touche's prestigious Technology Fast 500 Program, a ranking of the 500 fastest-growing technology companies in North America.

3.    In late November 2002, General Electric Medical Systems Information Technologies, Inc. ("GEMS IT"), the wholly-owned healthcare IT subsidiary of GE, announced that it was acquiring Millbrook.

4.    GEMS IT announced that it had completed the acquisition in January of 2003.

5.    Records in Millbrook's possession indicate that Northampton Internal Medicine Associates, P.C. ("NIMA") advised Millbrook that it needed to convert to new practice management software because its existing software would no longer be supported after March 2003.  It chose to license software from Millbrook Corporation known as the Millbrook Practice Manager$^{TM}$ ("MPM").

6.    Millbrook's records indicate that by the end of 2002, the MPM software had been installed in more than 2,200 physician practices in the U.S and was in use by more than 9,500 physicians in over 70 specialties. The system included an electronic claims submission component, commonly referred to as electronic data interchange or EDI.  This time-saving method of handling insurance claims processed more than 2 million transactions every month.

7.    NIMA also indicated that it wished to transmit electronic claims to third-party payers using the Millbrook EDI services.  Our records indicate that on February 24, 2003, NIMA entered into an Electronic Data Interchange Agreement (the "EDI Agreement") specifying the terms and conditions under which Millbrook would provide a mechanism to be used by NIMA for the purpose of submitting electronic claims files created with the Millbrook software.  A copy of that Agreement is attached as Exhibit A.

8.      That Agreement, signed by Roxanne Haber, Office Manager at NIMA,

provides in bold print, all caps, that:

> **ANY JUDICIAL PROCEEDING BROUGHT BY OR AGAINST ANY OF THE PARTIES TO THIS AGREEMENT ON ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR ANY MATTER RELATED HERETO SHALL BE BROUGHT IN ANY FEDERAL OR STATE COURT SITTING IN DALLAS COUNTY, TEXAS, AND, BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH OF THE PARTIES TO THIS AGREEMENT ACCEPTS FOR ITSELF THE EXCLUSIVE JURISDICTION AND VENUE OF THE AFORESAID COURTS AS TRIAL COURTS, AND IRREVOCABLY AGREES TO BE BOUND BY FINAL NON-APPEALABLE JUDGMENT RENDERED IN CONNECTION WITH THIS AGREEMENT.  THIS AGREEMENT HAS BEEN ACCEPTED BY A LICENSEE AT DALLAS, TEXAS, AND SHALL BE GOVERNED AND CONSTRUED UNDER AND IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO ITS CONFLICT OF LAW PRINCIPLES.  THE PARTIES AGREE TO SUBMIT ALL DISPUTES ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT TO NONBINDING ARBITRATION CONDUCTED IN DALLAS, TEXAS IN ACCORDANCE WITH THE RULES PROMULGATED BY THE AMERICAN ARBITRATION ASSOCIATION.**

9.      Subsequently, NIMA installed the Millbrook Practice Manager$^{TM}$ software

on new hardware purchased from a separate vendor.  When that software was installed by

NIMA or its agents, they were required to accept an End User License Agreement or

EULA in order to complete the installation.

10.     A copy of the EULA is attached as Exhibit B.

11.     The EULA provided, under the heading General Conditions and

Provisions in paragraph 3.1:

> **ANY JUDICIAL PROCEEDING BROUGHT BY OR AGAINST ANY OF THE PARTIES TO THIS AGREEMENT ON ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR ANY MATTER RELATED HERETO SHALL BE BROUGHT IN ANY FEDERAL OR STATE COURT SITTING IN DALLAS COUNTY, TEXAS, AND EACH OF THE PARTIES TO THIS AGREEMENT ACCEPTS FOR ITSELF THE EXCLUSIVE JURISDICTION AND VENUE OF THE AFORESAID COURTS AS TRIAL COURTS, AND IRREVOCABLY AGREES TO BE BOUND BY FINAL**

**NON-APPEALABLE JUDGMENT RENDERED IN CONNECTION WITH THIS AGREEMENT.  THIS AGREEMENT HAS BEEN ACCEPTED BY A LICENSEE AT DALLAS, TEXAS, AND SHALL BE GOVERNED AND CONSTRUED UNDER AND IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO ITS CONFLICT OF LAW PRINCIPLES.  THE PARTIES AGREE TO SUBMIT ALL DISPUTES ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT TO NONBINDING ARBITRATION CONDUCTED IN DALLAS, TEXAS IN ACCORDANCE WITH THE RULES PROMULGATED BY THE AMERICAN ARBITRATION ASSOCIATION.**

12.     Millbrook records indicate that on March 18 to 20, a Millbrook representative, Danielle Georgevich, conducted training at NIMA to show the users how to the MPM software.

13.     Our records show that after the MPM system was up and running, NIMA began complaining of problems processing claims using the EDI components.  In particular, some claims submitted to Tufts Health Plan and to Blue Cross Blue Shield of Massachusetts appeared to have been improperly formatted, apparently resulting in the initial rejection of those claims.

14.     NIMA apparently failed to resubmit many of the rejected claims in a timely manner.  In spite of difficulties presented by NIMA's tardy resubmissions, representatives of Millbrook subsequently worked with NIMA to resubmit and obtain payment on these rejected claims and, in many cases, these efforts succeeded in reversing the initial rejections.

15.     However, despite the combined efforts by NIMA and Millbrook, NIMA has advised Millbrook that some of the claims have still not been paid.  Millbrook records show that these unpaid claims total less than $50,000.

I affirm under the penalties of perjury that the statements above are true and correct.

/s/ Karri Huff_____
Karri Huff

Dated: June 16, 2005_

22181

# ELECTRONIC DATA INTERCHANGE AGREEMENT

This **ELECTRONIC DATA INTERCHANGE AGREEMENT** (this "Agreement") is made and entered into this _24_ day of _Feb_, 2002 (the "Execution Date"), by and between _Northampton Internal Medicine Assoc P.C._ a _Medical Practice_ ("Licensee") and **MILLBROOK CORPORATION**, a Texas corporation ("Millbrook").

Licensee and Millbrook agree that Millbrook shall provide Electronic Data Interchange ("EDI") services for Licensee, for the price and on the terms and conditions set forth below.

1.  Fees

    Transactions will be processed based on Licensee's election and shall be billed on a monthly, quarterly, or annual basis, as determined by Millbrook. Due to certain carrier requirements, some claims must be printed to paper. These claims are transmitted electronically to a clearinghouse, selected by Millbrook at its sole discretion, for printing on HCFA 1500 forms and forwarding to the carrier. The paper claim pricing includes the bill form, outgoing envelope and postage. Payment for EDI services shall be due 15 days from the date of each invoice..

    Should invoices become past due, Millbrook reserves the right, in its sole discretion, to suspend Licensee's EDI services until such time Licensee remits payment for all past due invoices plus a reinstatement fee.

2.  Term of EDI Services

    Millbrook shall provide EDI services for as long as Licensee elects to utilize this service; provided, however, that the fees set forth above shall be subject to change at any time upon thrity (30) days notice to Licensee. Either party may terminate this agreement at any time by giving the other party thirty (30) days written notice prior to termination. Upon termination by either party, Licensee agrees to pay all fees up to and including the date of termination.

3.  Liability Limitation

    Millbrook shall not be responsible for any errors or omissions in any claim (electronic or paper) received from Licensee or transmitted to payers unless due to its own gross negligence or willful misconduct. Millbrook's liability with respect to electronic claims submission shall not exceed the Licensee's actual cost incurred in correcting the errors or omissions and shall in no event be greater than the lesser of (i) the total amount paid by the Licensee to Millbrook Corporation for the

service in the one (1) month preceding the event which is the cause of the liability, and (ii) two thousand dollars ($2,000.00). In no event shall Millbrook be liable for any indirect, special, or consequential damage or loss of profit arising out of or related to EDI services, or performance thereof, or any errors or omissions in any transmission, even if it has been advised of the possibility thereof. Millbrook shall not be responsible for any unauthorized or other improper transmissions by or on behalf of Licensee or any other person. Neither party shall be responsible for delays or failures in performance resulting from acts or events beyond its control, including, but not limited to, acts of nature, government actions, fire, labor difficulties or shortages, civil disturbance, transportation problems, interruptions of power supply or communications or natural disasters, provided such party takes commercially reasonable efforts to minimize the effect of such acts or events.

4.    Licensee's Responsibility

    a.    Licensee shall not transmit claims for any person or entity that has not been deemed authorized for electronic transmission by Millbrook.

    b.    Licensee shall maintain permanent, complete, and accurate records of all transmissions, including the number of claims per transmission and the total dollar amount of each transmission. All records shall be maintained for at least eighteen (18) months from the date of transmission and shall be subject to inspection, copying, and audit by Millbrook at all reasonable times.

    c.    Licensee shall be responsible for reviewing all transmission reports and to immediately notify Millbrook of any error, omission, or discrepancy between the reports and the actual claims transmitted.

    d.    Licensee shall utilize all Millbrook carrier direct "plug-ins" to transmit electronic claims within ninety days of notification that the "plug-ins" are available. Should Licensee not utilize such carrier direct "plug-ins", Millbrook may charge Licensee for each claim not processed through the "plug-ins" at Millbrook's Per Claim Structure rates.

5.    General Terms and Conditions

    a.    Entire Agreement. This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof and there are no other oral or written understandings or agreements between the parties hereto relating to the subject matter hereof. This Agreement supersedes all prior agreement of the parties (oral or written) relating to the subject matter hereof.

b.    <u>Amendment</u>. No amendment or other modification of this Agreement shall be valid or binding on either party hereto, unless reduced to writing and executed by the parties hereto.

c.    **<u>Governing Law; Jurisdiction and Venue; Arbitration</u>. ANY JUDICIAL PROCEEDING BROUGHT BY OR AGAINST ANY OF THE PARTIES TO THIS AGREEMENT ON ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR ANY MATTER RELATED HERETO SHALL BE BROUGHT IN ANY FEDERAL OR STATE COURT SITTING IN DALLAS COUNTY, TEXAS, AND, BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH OF THE PARTIES TO THIS AGREEMENT ACCEPTS FOR ITSELF THE EXCLUSIVE JURISDICTION AND VENUE OF THE AFORESAID COURTS AS TRIAL COURTS, AND IRREVOCABLY AGREES TO BE BOUND BY FINAL NON-APPEALABLE JUDGMENT RENDERED IN CONNECTION WITH THIS AGREEMENT. THIS AGREEMENT HAS BEEN ACCEPTED BY A LICENSEE AT DALLAS, TEXAS, AND SHALL BE GOVERNED AND CONSTRUED UNDER AND IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO ITS CONFLICT OF LAW PRINCIPLES. THE PARTIES AGREE TO SUBMIT ALL DISPUTES ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT TO NONBINDING ARBITRATION, CONDUCTED IN DALLAS, TEXAS IN ACCORDANCE WITH THE RULES PROMULGATED BY THE AMERICAN ARBITRATION ASSOCIATION.**

d.    <u>Notice</u>. Any notice, request or instruction required to be given hereunder shall be in writing and delivered personally, sent by registered or certified mail, postage prepaid and return receipt requested, or sent by telex or facsimile:

(i)    if to Millbrook, to:

Millbrook Corporation
3330 Keller Springs, #201
Carrollton, TX 75006
Attn: President
Fax: (972) 663-2099

(ii)    if to Licensee, to:

_____
_____
_____
Attn:  _____
Fax:  _____

e.    Assignment.  This Agreement shall be binding upon and inure to the benefit of the successors and assignees of the parties hereto, but may not be assigned by Licensee to a third party without the prior written consent of Millbrook.

**LICENSEE:**                                    **MILLBROOK:**

Name of entity: *Northampton Internal Medicine*    **MILLBROOK CORPORATION**
                *Associates, P.C.*

By: _____          By: *Neil Simon* _____

Name: *Roxanne T. Habel* _____          Name: *Neil Simon* _____

Title: *Office Manager* _____          Title: *COO Practice Management* _____

**ELECTRONIC DATA INTERCHANGE AGREEMENT** - Page 4
Revised 8-2002

**Exhibit II**

# Flat Rate Structure
*Recommended for providers with high claim volumes*

## Submission:
- ☑ $55 per month for each provider submitting claims
  - o The "per provider" charge will also include access to all direct "plug-ins" at no additional charge.*
  - o No per claim charge
- ❑ UB92: 35¢ per claim
- ❑ Paper: 50¢ per claim

## Remittance:
Please select one of following option if you use remittance
- ☐ 10¢ per remittance line item  OR
- ☐ $20 per month for each provider utilizing remittance
  - o The "per provider" charge will also include access to all direct "plug-ins" at no additional charge.*
  - o No per claim charge

A current list of all direct "plug-ins" and their status is available on the Millbrook secure website. To locate the list, logon to our secure website and choose EDI from the Support menu. Click Direct Connections, click a state for a status list of the "plug-ins" for that state. In the Download Plug-in Software section, if a Millbrook version is listed, the plug-in is available today (requires separate enrollment which Millbrook will coordinate at no additional charge).

* If a plug-in is available or becomes available in the future, customers will receive enrollment information directly from Millbrook. Each customer will be provided 120 days to complete enrollment. After which, customers will be charged on a per claim basis in addition to all other fees.

Customer Name Northampton Internal Medicine Assoc. P.C.

Millbrook Client # 22181

Authorized by Roxanne J. Habec
            **Print Name**                                 **Signature**

## The following Millbrook Practice Manager™ End User License Agreement applies to you.

**MILLBROOK CORPORATION**
**MILLBROOK PRACTICE MANAGER™ END USER LICENSE AGREEMENT**

This **MILLBROOK PRACTICE MANAGER™ END USER LICENSE AGREEMENT** (this "Agreement") is a legal contract between you (either an individual or an entity) and Millbrook Corporation ("Millbrook"). By installing the Millbrook Software, you are agreeing to be bound by the terms of this Agreement, unless you have a valid executed Software License agreement with Millbrook. If you do not agree to the terms of this Agreement, then do not break the seal on the enclosed materials and return such materials for a refund.

### LICENSE

1.1    <u>Purchase of Non-Exclusive License to Use the Software.</u>  You have purchased a perpetual, non-exclusive, and non-transferable license to use the Software (as defined below). The license purchased is subject to the limitations set forth in this Agreement.

1.2    <u>Grant of Non-Exclusive License to Use the Software.</u>

(a)  <u>Grant of License.</u>   Millbrook hereby grants to you, and you hereby accept, a perpetual, non-exclusive, and non-transferable license (the "License") to use its Millbrook Practice Manager™ software, including any modifications, updates, and upgrades, if any, that may be delivered to you, and including accompanying documentation (the "Software"). Subject to the limitations set forth in this Agreement, the Software may be used by any number of users, on any number of computers, and at any number of sites.

(b)  <u>Use Limitations.</u>  Unless otherwise agreed to by Millbrook in writing, your license under this Agreement is specifically limited to the number of Physicians and Other Providers specified in the Millbrook license. Any use of the Software by you for a larger number of Physicians and Other Providers constitutes a violation of this Agreement, and is cause for Millbrook to terminate this Agreement. You shall have no right to use the Software on any computer that is not owned by or leased to you. You shall have no right to copy, sell, license, sublicense, rent, market, or otherwise convey any interest in the Software. You may not reverse engineer, de-compile, or disassemble the Software. You may not copy any of the documentation accompanying the Software, except for internal use.

(c)  <u>Licensing Information.</u>   Licensee shall provide Millbrook, via the Millbrook licensing process, statistical information on the Physicians and Other Providers utilizing the Software. At the request of Millbrook, which requests shall be both reasonable in time and scope, Licensee shall use all commercially reasonable efforts to supply to Millbrook the names, number of encounters, hardware and software operating environment, and any other relevant information that Millbrook should request, with respect to the Physicians and Other Providers that utilize the Software. Any statistical information obtained by Millbrook shall be subject to the provisions of Health Insurance Portability and Accountability Act and other applicable federal regulations. Licensee acknowledges and agrees that Millbrook may use such statistical information, in an aggregate basis with other licensees of the Software, for marketing and development purposes.

### LIMITED WARRANTY, ETC.

2.1    <u>Limited Warranty.</u>  Millbrook warrants for a period of ninety (90) days from the first date licensee utilizes the Software for its intended purpose, the Software will perform substantially in accordance with the specifications and documentation for the Software. Any implied warranties on the Software are limited to ninety (90) days. Millbrook does not warrant that the Software will be error-free in all circumstances. In the event of a defect or error covered by such warranty, you agree to provide Millbrook with sufficient information to allow Millbrook to reproduce the defect or error. As your exclusive remedy, and as Millbrook's entire liability in contract, tort, or otherwise, under this warranty, Millbrook will correct such error or defect by issuing corrected instructions, a restriction, or a bypass. If Millbrook is unable to correct such defect or error after a reasonable opportunity to do so, Millbrook will refund the amount paid by you for the Software. Millbrook is not responsible for any defect or error not reported during the warranty period or any defect or error in Software which has been modified, misused, or damaged.

2.2    <u>No Other Warranty.</u>  **EXCEPT AS SPECIFICALLY PROVIDED IN SECTION 2.1, ABOVE, THE LICENSE OF THE SOFTWARE WAS SOLD AND DELIVERED ON AN "AS IS" BASIS, WITHOUT RECOURSE. EXCEPT AS EXPRESSLY PROVIDED HEREIN, MILLBROOK DISCLAIMS AND YOU WAIVE ALL WARRANTIES, EXPRESS OR IMPLIED, IN FACT OR BY OPERATION OF LAW OR OTHERWISE, CONTAINED IN OR DERIVED FROM THIS AGREEMENT, OR ANY ATTACHMENTS, OR ANY OTHER ORAL OR WRITTEN COMMUNICATIONS, INCLUDING WITHOUT LIMITATION IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

2.3    <u>Limited Remedies.</u>  **To the maximum extent permitted by law, Millbrook shall in no event be held liable for consequential or indirect damages of any nature, regardless of whether Millbrook was advised or is aware of the possibility of such damages, including for loss or corruption of data.**

2.4    <u>Copyright; Other Rights.</u>  The Software is owned by Millbrook and is protected by United States copyright laws and international treaty provisions. You shall not undertake any action that will interfere with or diminish Millbrook's rights, title and/or interests in the Software.

2.5    <u>Data.</u>  Millbrook shall not be liable for any errors, omissions, delays, or losses of data or damage to media unless caused by Millbrook's willful misconduct. You are responsible for adopting reasonable measures to limit the impact of any such occurrences, including regularly backing-up data, adopting procedures to ensure the accuracy of input data, examining and confirming results prior to use, and adopting procedures to identify and correct errors and omissions, replace lost or damaged media, and reconstruct data. You are also responsible for complying with all local, state, and federal laws pertaining to the use and disclosure of any data.

### GENERAL CONDITIONS AND PROVISIONS

3.1     ANY JUDICIAL PROCEEDING BROUGHT BY OR AGAINST ANY OF THE PARTIES TO THIS AGREEMENT ON ANY DISPUTE ARISING OUT OF THIS AGREEMENT OR ANY MATTER RELATED HERETO SHALL BE BROUGHT IN ANY FEDERAL OR STATE COURT SITTING IN DALLAS COUNTY, TEXAS, AND EACH OF THE PARTIES TO THIS AGREEMENT ACCEPTS FOR ITSELF THE EXCLUSIVE JURISDICTION AND VENUE OF THE AFORESAID COURTS AS TRIAL COURTS, AND IRREVOCABLY AGREES TO BE BOUND BY FINAL NON-APPEALABLE JUDGMENT RENDERED IN CONNECTION WITH THIS AGREEMENT. THIS AGREEMENT SHALL BE GOVERNED AND CONSTRUED UNDER AND IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO ITS CONFLICT OF LAW PRINCIPLES. THE PARTIES AGREE TO SUBMIT ALL DISPUTES ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT TO NONBINDING ARBITRATION, CONDUCTED IN DALLAS, TEXAS IN ACCORDANCE WITH THE RULES PROMULGATED BY THE AMERICAN ARBITRATION ASSOCIATION.